## J. O. A WHALEY ET AL. v R. E. THOMASON.

### Decided January 20, 1906.

**1.—Local Option Election—Contest—Sufficiency of Pleading.**

Article 3397, Rev. Stats., empowers any court of competent jurisdiction to adjudge a local option election to be void when it is made to appear that the election was illegally or fraudulently conducted. An election in which the will of the majority is defeated by conspiracy and bribery is both illegal and fraudulent. A petition, in a contest of a local option election, alleged in substance, that out of a fund raised by persons interested in defeating local option, and in anticipation of such election, the poll taxes of about five hundred voters were paid and their tax receipts obtained by said persons in pursuance of a conspiracy to defeat local option at said election; that said taxes were paid with the understanding, express or implied, that said voters in consideration thereof were to vote against prohibition, and that said voters, at an election thereafter held, did vote against prohibition, thereby defeating prohibition which otherwise would have carried. Held, sufficient on general demurrer.

**2.—Same.**

It is not necessary in order to make a case of fraud and illegality in an election that the officers conducting the same should themselves be implicated in the fraud or illegality.

**3.—Same.**

While in contesting local option election on the ground of fraud and illegality, the inquiry should be confined to what took place at the very time of the election, still to prove fraud on the day of election inquiry may be made into what took place before the election.

**4.—Treating on Election Day—Unlawful.**

The use of money or whisky or cigars on election day for the purpose of influencing voters, is contrary to the Terrell election law and unlawful.

**5.—Election Law—Construction.**

Our election law, being designed to purify the ballot, should be liberally construed and rigidly enforced to that end.

Appeal from the District Court of Cooke County. Tried below before Hon. D. E. Barrett.

*R. V. Bell, Culp & Giddings, Garnett & Eldridge,* and *Robert E. Cofer,* for appellant.—The court erred in holding on the contestee's general demurrer that votes of persons, whose poll taxes have been paid by third persons out of a corrupt fund, raised among saloon men, under an understanding and agreement between the said voters and such third persons, that they, said voters, would vote against prohibition in consideration of the payment of their said poll taxes, in order to further the personal and private interests of such third persons and saloon men, so corruptly paying said taxes, were legal votes and not bribed votes, and in holding that such votes, so bribed by the saloon men and actually voting against prohibition, should be received and considered as against prohibition, in the face of contestants' allegations that the votes of said bribed persons did actually change the result of said election from a majority of the qualified and legal votes in favor of prohibition to a majority against prohibition, it appearing that there were cast in said election three hundred and eighty-seven

of such illegal and bribed votes, and that with these illegal and bribed votes counted the majority against prohibition was only forty votes, and without them the majority in favor of prohibition exceeds two hundred and fifty votes.  Const. art. 6, sec. 2, as amended in 1901; Terrell Election Law of 1903.  See Acts 28th Leg., p. 133, sec. 2; also secs. 22, 125, 126, 131, 132; Stinson v. Gardner, 97 Texas, 287; Jones v. Carver (Texas Civ. App.), 67 S. W. Rep., 780; Roby v. Carter, 6 Texas Civ. App., 299; State v. Conner, 23 S. W. Rep., 1103; Whittaker v. Watson (Ark.), 60 S. W. Rep., 652; Chicago, M. & St. P. Ry. Co. v. Shea, 67 Iowa, 728; Carrothers v. Russell (Iowa), 36 Am. Rep., 222; State v. Purdy, 36 Wis., 213; Frieszelben v. Shallcross, 8 Law Rep. Ann., 337.

Illegality in the conduct of a prohibition election includes the casting of illegal votes, and the receiving and counting and returning by the officers of election of such illegal votes.  And such illegalities constitute valid and legal grounds for contesting a prohibition election, where there are enough of such illegal votes cast, counted and returned to have changed the result of such election from what it otherwise would have been, had said illegal votes not been cast, counted and returned.  Const. art. 5, sec. 8, as amended in 1891, conferring on the District Court jurisdiction over "contested elections;" Rev. Stats., art. 3397; Norman v. Thompson, 96 Texas, 250; Stinson v. Gardner, 78 S. W. Rep., 492; Oxford v. Frank, 70 S. W. Rep., 426; Scarborough v. Eubank, 93 Texas, 108; Kidd v. Truitt, 68 S. W. Rep., 310.

*W. O. Davis, Potter & Potter, Stuart & Bell, J. T. Adams, A. M. Green, J. E. Hayworth* and *T. M. Bosson,* for appellee.—The alleged collection of a fund in 1904, and the payment of certain poll taxes out of this fund prior to February 1, 1905, under written authority from the persons against whom it was assessed, and the voting of the majority of the persons whose poll taxes were so paid constitutes no ground under article 3397 for contesting the election held on September 9, 1905, because it does not follow therefrom that said election was illegally or fraudulently conducted, or that any legal voter was denied the privilege of voting, or that such irregularities existed as to render the true result of the election impossible to be arrived at or doubtful of ascertaining.  Norman v. Thompson, 96 Texas, 250; Stinson v. Gardner, 97 Texas, 287; Lowery v. Briggs, 73 S. W. Rep., 1062.

STEPHENS, Associate Justice.—The proposition to determine whether or not the sale of intoxicating liquors should be prohibited in Cooke County, Texas, was submitted to the voters of that county on September 9, 1905, and rejected by a majority of forty votes, as declared by the Commissioners' Court on September 20, 1905.  In due time thereafter twenty citizens and voters of Cooke County instituted a proceeding to contest the election, which resulted in a judgment against them, the court sustaining a general demurrer to their statement of the grounds of contest, and from that judgment this appeal is prosecuted.

The statement of the grounds of contest, which, for convenience, will be denominated the petition, abounds in redundant and somewhat

lurid allegations and contains some that are seemingly even contra-
dictory, but as no objection was made to the form of the allegations
every reasonable intendment is to be indulged in favor of the plead-
ing.   Northwestern Nat. Ins. Co. v. Woodward, 45 S. W. Rep., 185,
and cases there cited.   So treated, the petition made a case, we think,
of an election conducted in violation of sections 131 and 133 of what is
known as the Terrell election law, adopted in 1903.   General Laws
of 1903, page 156.   The first named section makes it a felony for any
person to lend or contribute or to offer or promise to lend or contribute
or pay any money or other valuable thing to any voter to induce him to
vote or refrain from voting for or against any person, or for or against
any particular proposition submitted to votes, or to induce such voter
to come to the polls or remain away from the polls at any election,
or to induce such voter or other person to place or cause to be placed
his name on the poll tax or certificates of exemption rolls.   The other
section imposes the same penalty on any one who receives, agrees to re-
ceive, or contracts for before or during election to receive any money,
gift, loan, or other valuable thing, place, office or employment for
himself or for any other person, for voting or agreeing to vote, or for
going or agreeing to go to the polls on election day, for remaining away
or agreeing to remain away from the polls on election day, or for re-
fraining or agreeing to refrain from obtaining his poll tax receipt or
certificate of exemption, or for obtaining or agreeing to obtain the
same, or for voting or agreeing to vote for or against any particular
person or proposition submitted to a vote of the people.   The petition
charges that out of a fund of about $5,000 raised by certain named
persons engaged in the sale of intoxicating liquors and therefore inter-
ested in defeating the adoption of prohibition in Cooke County, in
anticipation of the election in question, thereafter ordered, the poll
taxes of about five hundred voters were paid and their tax receipts
obtained in pursuance of a combination and conspiracy formed by said
persons to prevent the adoption of said measure.   The petition further
charges that "said combination furnished and advanced and loaned the
money with which said poll taxes were paid without any promise or
expectation that said money should ever be returned; that they were
paid for said citizens with the understanding, express or implied, be-
tween said saloon men and their agents on the one side and the said
respective citizens on the other side, that the said citizens in considera-
tion of the payment of their poll taxes, were to vote against prohibi-
tion in the event of such election during the year 1905;" that said
combination wrongfully obtained possession of said tax receipts and
held the same till election day "or a short time before," when they were
delivered, respectively, to the voters therein named, who "voted at said
election against prohibition without having paid their poll taxes as
prescribed and required by the constitution."

The petition further charges that the number of persons so voting,
who either exhibited such tax receipts or, in lieu thereof, affidavits
of their loss, amounted to five hundred, and that the these votes were
received and counted, which resulted in a majority of forty against
prohibition, when but for the illegality and fraud alleged the majority
would have been the other way.   These allegations, for the purpose

of this appeal, must be taken as true, that being the effect of the general demurrer.

The question to be decided, then, is, has the court trying a contested election case the power to set aside a local option election for bribery where a sufficient number of bribed votes have been cast to affect the result? This question, we think, should receive an affirmative answer. Article 3397 of our Revised Statutes empowers any court of competent jurisdiction (which is now the District Court) to adjudge a local option election to be void when it is made to "appear from the evidence that the election was illegally or fraudulently conducted." We can not well conceive of a clearer case of illegality and fraud in the holding of an election than one in which a fair expression of the will of the majority is defeated by conspiracy and bribery. It is by no means necessary, as seems to be contended, in order to make a case of fraud and illegality in an election that the officers conducting the election should themselves be implicated. It might as well be contended that a fraudulent judgment could not be set aside because the officers of the court in which .it was entered had no knowledge of the fraud. When a sufficient number of illegal or fraudulent votes are cast and counted to render the verdict at the polls a false verdict, the tribunal empowered to contest the election for fraud and illegality should set it aside, without reference to the guilt or innocence of the officers of election, for that is wholly immaterial. The language used by the Legislature, "illegally or fraudulently conducted," is certainly broad enough to include a case of fraud perpetrated without the knowledge of the officers of election, and no reason is perceived why the Legislature should have made such cases immune: The evident purpose of this legislation was to enable any voter and citizen by contesting a local option election to prevent the adoption or rejection of a local law through fraud and illegality in the election, however perpetrated, contrary to the will of a majority of those entitled to determine the matter. True, it has been declared by the Supreme Court that the Legislature intended to confine the inquiry to what takes place at the very time of the election, contrary to the more liberal view expressed by this court in Rayner v. Forbes, 52 S. W. Rep., 568; Scarborough v. Eubank, 93 Texas, 108, and Oxford v. Frank, 70 S. W. Rep., 426; but it would be too narrow for any court to hold that fraud perpetrated on the day of election could not be proved because it involved an inquiry into what took place immediately or even long before the election. This case is clearly distinguishable from Stinson v. Gardner, 97 Texas, 287, so much relied on by the appellee. What was held to be a ground of contest in that case by the district judge was held by him to be unavailing, and so the Supreme Court held, but the Supreme Court seem to have expressed an opinion contrary to that of the District Court as to what would constitute a ground of contest. The difference between this case and that is, first, bribery is charged in this and it was not in that; second, the alleged illegal or fraudulent votes affect the result in this case and they did not in that.

The petition further alleges that a number of persons voted who were not authorized to vote at all in said election and that still others voted in the wrong precinct. If a sufficient number of merely illegal

votes were cast to affect the result, no reason is perceived why the views above expressed should not apply to that phase of the case also, since the result of the election would in such case be controlled by illegal votes however innocently cast. An election so held would be "illegally," though not "fraudulently, conducted." However, if the votes were merely cast in the wrong precinct and the result would have been the same if they had been cast in the proper precinct, the court might not be warranted in setting the election aside on that ground, and the writer, without a thorough examination of the question, is inclined to so hold; but the other members of the court are inclined to entertain a contrary view.

A further ground of contest was the alleged use on the day of election of whisky and cigars to influence voters to vote against the adoption of the proposed law, but as the allegations presenting this ground of contest are rather general and indefinite we will content ourselves with a very brief statement of the views entertained by us on that subject. If, as alleged, "on the election day such money and whisky and cigars were freely used, wherever possible, in bribing and influencing voters to cast their votes against prohibition," we see no reason why the sections of the Terrell election law above set out were not violated, although the petition seems to have termed these alleged acts "irregularities." To treat the voter on election day to cigars, liquors or the like may seem a trivial matter, and votes so influenced would undoubtedly be very cheap, but such votes go as far as any others in determining the final result of the election. All such appeals to the appetite of the voter are at least contrary to the spirit of our election law, which was designed to purify the ballot in Texas and should be liberally construed and rigidly enforced. It will be observed that this law forbids the use of anything of value to even bring voters to the polls. A pure and untrammeled ballot is of far more importance to the people of Texas than the success or failure of any proposed local measure, however good or bad it may be.

Because the court erred in sustaining the general demurrer the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*