TRIMBLE v. HAWKINS. (No. 8812.)

(Court of Civil Appeals of Texas. Ft. Worth. June 30, 1917.)

1. APPEAL AND ERROR ⊜⇒614—STATEMENT OF FACTS—AUTHENTICATION.

Where an instrument purporting to be a statement of facts is not signed by counsel or approved by the trial judge, the appellate court cannot consider it for any purpose.

2. APPEAL AND ERROR ⊜⇒659(6) — REVIEW — CERTIORARI TO CORRECT RECORD.

A motion for certiorari to correct the record filed subsequent to submission alleging that the purported petition contained in the record, though bearing the file mark of the district clerk, was not in fact the petition on which the judgment was rendered, but was an amended petition that was not filed until after the hearing, and that appellee did not know of such instrument until after submission, will be denied where the original petition attached to the commission contained substantially the same allegations as the amended petition in the record, and in view of the fact that it would be impracticable to dispose of the cause at the current term should the motion be granted, and it is not made to appear that any substantial advantage would accrue to appellant and no amended record is tendered for filing by the motion.

3. INJUNCTION ⊜⇒76 — GROUNDS — ELECTION FRAUD.

An allegation in a petition that fraud or misrepresentation was made by a live stock inspector and those interested in securing the passage of the quarantine law as applied to a county in an election held for that purpose does not present a legal ground for an injunction restraining the inspector from requiring cattle to be dipped.

4. ANIMALS ⊜⇒29 — CONTAGIOUS DISEASES — STATUTORY REGULATIONS—CONSTRUCTION.

Acts 35th Leg. c. 60, § 3, authorizes the commissioners' court to make an appropriation for public dipping vats for the eradication of fever-carrying ticks. Section 2 provides that for this purpose the commission is empowered and directed to establish special quarantine districts where such diseases are known to exist, and to quarantine the premises or pastures located in such districts and the domestic live stock therein when to their knowledge such pastures or premises are infected. Section 4 makes it the duty of the commission to investigate any disease of which they have reason to believe, or have notice, and to quarantine when they have reason to believe, it exists. Held that, before

the live stock sanitary commission or its agents or inspectors are authorized to require cattle to be dipped, an inspection must be had under the authority of such commission of the county, district, or premises cattle from which are required to be dipped, and that such inspection shall disclose the presence of such ticks and the necessity for such dipping, and in the absence of such inspection one required to dip cattle is entitled to injunctive relief.

**5. INJUNCTION** ⊚⟹119—ACTION FOR INJUNCTION—ANSWER—SUFFICIENCY.

An allegation of defendant's verified answer denying the material allegations made by plaintiff as to his cattle and premises being free from ticks, and alleging the facts to be that he has inspected a large number of cattle in M. county, and has convinced himself that many cattle in said county have fever ticks, and that other representatives and agents of the commission in said county have also inspected many cattle and found the same conditions to exist, and that the live stock sanitary commission of Texas has declared all premises within M. county to be infected with or exposed to contagious and communicable diseases common to live stock, and alleging that the dip used has been according to the "legal formula," although not definite or in orderly sequence in support of the judgment, in the absence of special exception sufficiently averred that the sanitary live stock commission, after an investigation and inspection by the inspector and the commission's other agents, had quarantined the county and declared all cattle and premises therein to be unclean, and had required such cattle to be dipped.

**6. APPEAL AND ERROR** ⊚⟹544(1)—INJUNCTION ⊚⟹119—ANSWER—SUFFICIENCY.

The allegations of the petition that plaintiff was the owner of cattle at premises free and clean from fever ticks and all infection, and that he had been required to have his cattle dipped, although no inspection had been made by the inspector or his agents to determine the presence of ticks, were sufficiently denied by an answer alleging that the commission after investigation and inspection had quarantined the county and required the cattle therein to be dipped, and in the absence of a statement of facts the court's action in refusing injunctive relief will not be disturbed.

**7. PLEADING** ⊚⟹253—ANSWER AFTER AMENDMENT—NECESSITY OF REPETITION.

A denial of material allegations in an original petition would not have to be repeated because such allegations are repeated in the amended petition.

**8. INJUNCTION** ⊚⟹119 — ANSWER — GENERAL DENIAL—EFFECT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4663, providing that defendant in injunction may answer as in other civil actions, but no injunction shall be dissolved before final hearing because of material allegations of the petition unless the answer denying the same is verified, even a general denial under oath puts in issue the allegations of a petition for injunction and requires the plaintiff to sustain the allegations by proof.

**9. PLEADING** ⊚⟹253—ANSWER—GENERAL DENIAL—REPETITION IN CASE OF AMENDMENT.

Under the direct provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 1908, a general denial is not required to be repeated when plaintiff amends his pleading.

**10. APPEAL AND ERROR** ⊚⟹854(2)—REVIEW—REASONS FOR JUDGMENT.

Where a judgment was correct, it will not be disturbed, although all the reasons assigned by the trial court in support of it are not applicable or pertinent.

Appeal from District Court, Montague County; C. F. Spencer, Judge.

Suit for injunction by W. S. Trimble against T. W. Hawkins. Judgment for defendant, and plaintiff appeals. Affirmed.

J. L. Rudy, of Bowie, for appellant. Speer & Donald, of Bowie, for appellee.

BUCK, J. [1] Appellant applied to the district judge of Montague county for a writ of injunction to restrain appellee, alleged to be the inspector in and for said county and acting under the live stock sanitary commission of Texas, from requiring appellant's cattle to be dipped. A hearing was had upon the law questions involved, and presumably some testimony was introduced. We say presumably, for there is among the papers in this case an instrument purporting to be a statement of facts, but it is not signed by counsel or approved by the judge. Hence we cannot consider it as a statement of facts, or for any other purpose. From an order and judgment denying the relief sought, plaintiff has appealed.

Both parties have filed briefs, and appellee has, subsequent to the submission of this cause, presented to this court a motion to set aside the submission and for a writ of certiorari to correct the record, alleging that the purported petition contained in the record, though it bears the file mark of the district clerk as of date May 28, 1917, is not in fact the petition upon which the judgment was rendered; that in fact such purported amended petition was never filed in the district clerk's office until after the hearing, and that neither appellee nor his counsel knew of such instrument having been filed until subsequent to the filing of the record in this court. It is further alleged that the district clerk's true file mark, as shown on this amended petition, on file in the district clerk's office, is of date June 4, 1917, instead of May 28, as it appears in the record. Attached to this motion is what is alleged to be the original petition upon which the hearing was had.

[2] We have concluded that this motion should be overruled, inasmuch as such attached original petition contains substantially the allegations of the amended petition, even though we are authorized to entertain the motion for certiorari filed subsequent to submission. Owing to the fact that this is the last week of our term, it would be impracticable for the cause to be disposed of at this term, should we grant appellee's motion. Moreover, it is not made to appear that any substantial advantage would accrue to appellee or appellant should we grant the motion, or that the record would be in such shape that we could pass more intelligently or with more light on the questions presented. No amended record is tendered for filing by the motion. Hence we have concluded that the motion should be overruled.

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The petition for injunction is rather lengthy, but, penetrating through the somewhat tropical verbiage by which the allegations of fact in the petition are at times obscured, it appears that the plaintiff alleged:

(1) That he was the owner of nine head of cattle all free from and clean of ticks and of all infectious and communicable diseases, that said cattle have not been exposed to ticks or such diseases, and that the premises on which said cattle are kept are also free from ticks.

(2) That the vats provided for the dipping of these cattle and other cattle in Montague county are filled with a liquid poison, injurious and dangerous to stock if dipped therein, and that said dip so used and proposed to be used had not been prepared by any competent person qualified to determine the requisite ingredients to be used, or the requisite proportions to be observed.

(3) That appellee had required plaintiff to have his cows dipped by the sheriff of Montague county, and had driven them a distance of eight miles and back within four hours' time; that no inspection had been made in Montague county by defendant or his agents to determine the presence of ticks on the cattle or premises.

(4) That said defendant proposes and threatens to dip said alleged clean cattle again; that said dipping causes their noses, udders and around their horns to become blistered and cracked and sore; their milk to be greatly diminished, and many of the cattle so dipped have died as a result thereof.

(5) That plaintiff has no adequate legal remedy, that defendant is insolvent, and that plaintiff has suffered and will suffer monetary damages.

(6) That fraud and misrepresentation were made by appellee and those interested in securing the passage of the quarantine law as applied to Montague county in the election held for that purpose.

(7) That the county commissioners had appropriated $5,000 to provide dipping vats and dipping fluid, without charge to owners of cattle, but the defendant had caused and procured, forced, and compelled the citizens' of Montague county to prepare dipping facilities at their own expense, etc.

[3] We think that portion of the petition attacking the election does not present a legal ground for the injunctive relief sought. Nor do we think it necessary to consider the question of the appropriation by the county, or the authority of the county commissioners' court to make such appropriation to provide vats and dipping fluid, except to say that in our opinion it is questionable whether the authority contained in section 3, p. 109, of the Acts of the Thirty-Fifth Legislature of 1917 authorizes the commissioners' court to make an appropriation for constructing or leasing necessary public dipping vats within their county for the eradication of fever-carrying ticks. The disease for which this appropriation is authorized seem to be limited to anthrax, hog cholera, glanders, etc., as mentioned in said section. But in this appeal we are not called upon to decide, and therefore do not decide, whether such authorized appropriation may be legally made to cover expenses incident to the dipping of cattle against ticks.

[4] It is only necessary for us to state that in our opinion, before the live stock sanitary commission, or its agents or inspectors, are authorized to require cattle to be dipped for the purpose of eradicating the fever-carrying tick, it is a prerequisite that an inspection be had under the authority of said live stock sanitary commission of the county, district, or premises cattle from which are required to be dipped, and that such inspection shall disclose the presence of such ticks and the necessity for such dipping. Section 1 of this act. Section 2 of the act provides that for the purpose of eradicating the obnoxious tick the live stock sanitary commission, hereinafter called commission—"is empowered and directed to establish special quarantine districts, where such diseases, or infections of such diseases, are known to exist. * * * The live stock sanitary commission shall have the power to quarantine the premises or pastures located in said special quarantine districts and the domestic live stock thereon situated in such quarantine districts or elsewhere, when to their knowledge such pastures or premises, or the live stock located thereon are infected with or have been exposed to, a malignant, contagious, infectious, or communicable disease, or the infection thereof."

Section 4 of the act further provides that it is the duty of the said commission—"whenever they have reason to believe, or shall receive notice that any malignant, contagious, infectious, or communicable disease, or infection thereof, exists among any domestic animals in this state, to immediately investigate, and if such disease is found to exist, or if they have reason to believe such disease exists, to immediately quarantine such animals and the premises upon which they are located."

While we do not believe that the act, whose construction is involved, requires the commission to have inspected each head of cattle or every farm or pasture, or other place where cattle are kept, in order to determine whether a quarantine is proper and justifiable as to any county, district, or area, yet we are of the opinion that as to any quarantine of such county, district, or area ordered inspection or investigation by said commission, or those working under its direction, should be made, and that this is a prerequisite to the establishment of a quarantine and the enforcement of the requirement that all cattle within such area shall be dipped. Hence we conclude that on the face of plaintiff's petition he disclosed sufficient grounds for injunctive relief.

But defendant's verified answer filed May 26, 1917, and directed to plaintiff's original petition, denies the material allegations made by plaintiff as to his cattle and premises being free from ticks, and alleges the facts to

be that he has inspected a large number of cattle in Montague county, and has convinced himself that many cattle in said county have fever ticks, and that other representatives and agents of the commission in said county have also inspected many cattle, and found the same conditions to exist, and that the live stock sanitary commission of Texas have declared all premises within Montague county to be infected with or exposed to contagious and communicable diseases common to live stock, and alleges that the dip used has been according to the "legal formula."

[5] While the allegations are not as definite as they might properly be, nor perhaps given in the orderly sequence, yet we are of the opinion that, in support of the judgment, and in the absence of any special exception directed thereto, we should hold that said allegations substantially aver, and are reasonably intended to state, that the sanitary commission, after an investigation and inspection by the appellee and its other agents, had quarantined Montague county and had declared all the cattle and premises therein to be unclean and had required the cattle thereon to be dipped. Whaley v. Thomason, 41 Tex. Civ. App. 405, 93 S. W. 212.

[6] If this be a reasonable construction of the answer, and we think it is, the essential allegations contained in plaintiff's petition are denied, and, in the absence of a statement of facts, we are not prepared to say that the court was not authorized to refuse the injunctive relief sought.

[7] While the answer of defendant, appearing in the record, shows to have been filed prior to the filing of the amended petition, and no answer is filed to said amended petition, yet a denial of the material allegations in the original petition would not have to be repeated, because said allegations are repeated in the amended petition.

[8] Even a general denial under oath puts in issue the allegations of the petition for injunction and requires the plaintiff to sustain his allegations by proof. Murphy et al. v. Smith et al., 38 Tex. Civ. App. 50, 84 S. W. 678.

[9] Nor is the general denial required to be repeated if the plaintiff should amend his pleadings. Articles 1908 and 4663, Vernon's Sayles' Texas Civil Statutes. From the recitations and allegations in the defendant's answer, even though we should not consider the purported original petition attached to appellee's motion for certiorari, it is evident that the original petition did contain essentially, though not in so amplified a form perhaps, the allegations presented in the amended petition.

[10] Hence we are of the opinion that we cannot disturb the judgment rendered by the trial court, though we may not believe that all of the reasons assigned by the court in support of such judgment are applicable or pertinent. A judgment may be correct, though the reason given therefor is not good. 4 C. J. § 2557; Calvin v. Neel, 191 S. W. 791.

We conclude, therefore, that the judgment should be affirmed; and it is so ordered.