PAGE et al. v. TUCKER, County Judge, et al. (No. 2171.)

(Court of Civil Appeals of Texas. Texarkana. Oct. 30, 1919. Rehearing Denied Nov. 13, 1919.)

1. STATUTES ⊂⊃141(2)—LATER STATUTE NOT INVALID AS AMENDATORY BECAUSE IT FAILED TO SET OUT AT LENGTH THE EARLIER STATUTE AFFECTED.

Acts 35th Leg. (1917) c. 60, which supplemented the act of creating a Live Stock Sanitary Commission for the state of Texas found in Acts 1893, c. 56, which was modified by Acts 33d Leg. (1913) c. 169, is not invalid under Const. art. 3, § 36, declaring that no law shall be revived or amended by reference to its title because it did not set out the earlier legislation; the latter act being complete and entire in itself.

2. ANIMALS ⊂⊃29—TICK ERADICATION LAW NOT INVALID AS PRESCRIBING EXCESSIVE PENALTIES.

Acts 35th Leg. (1917) c. 60, supplementing the act creating a Live Stock Sanitary Commission (Acts 1893, c. 56), and requiring the dipping of cattle to prevent diseases, is not invalid as prescribing unreasonable and excessive penalties for failure, the penalties ranging only from $10 to $200.

3. EMINENT DOMAIN ⊂⊃2(2)—TICK ERADICATION LAW NOT INVALID AS INJURING PRIVATE PROPERTY WITHOUT COMPENSATION.

The tick eradication law of 1917, requiring dipping of cattle, is not void as authorizing injury to private property for public use without compensation, as the dipping process is harmless to the animals when properly handled, and removes the cause of disease.

4. ANIMALS ⊂⊃29—INSPECTION OF ALL ANIMALS FOR TICKS UNNECESSARY.

Where official inspection disclosed that there were ticks in the locality and the county, it was proper under Acts 35th Leg. (1917) c. 60, to require the dipping of cattle without an inspection of all the animals therein.

5. INJUNCTION ⊂⊃11 — NO RELIEF WITHOUT SHOWING OF PROBABLE INJURY.

Though Acts 35th Leg. (1917) c. 60, requires owners within the areas prescribed to have their cattle dipped and provides a penalty, owners of cattle are not entitled to enjoin county officials from enforcing the law, where there is no evidence that such officials were threatening to prosecute the owners criminally or were intending to forcibly seize the cattle for the purpose of dipping them.

Appeal from District Court, Hopkins County; Wm. Pierson, Judge.

Injunction suit by W. S. Page and others against T. J. Tucker, County Judge, and others. From an order denying the writ, plaintiffs appeal. Affirmed.

R. D. Allen, of Sulphur Springs, for appellants.

T. J. Ramey and C. E. Sheppard, both of Sulphur Springs, for appellees.

HODGES, J. The appellants are the owners of cattle, and reside in Hopkins county. By official proclamation Hopkins county has been placed in what is termed "zone No. 1," and all cattle therein are required to be dipped periodically in a prescribed fluid for the purpose of eradicating cattle ticks. In May, 1919, appellants filed their petition in the district court of Hopkins county asking for an injunction restraining the commissioners' court and other named officers from proceeding to enforce the tick eradication law against the appellants and other stock owners situated in justice precinct No. 3 of Hopkins county. They allege, in substance, that the commissioners' court for Hopkins county had previously entered an order providing the necessary funds and had appointed the inspectors · provided for. They attack the constitutionality of that law, and present at some length different legal reasons for holding it unconstitutional. It is averred that the fluid prescribed is not only worthless for the purpose of destroying ticks, but injurious to stock when dipped therein. The petition concludes with a prayer that the officers charged with the enforcement of the law be enjoined from seizing or interfering in any way with the appellants' cattle or the cattle of other stock owners in precinct No. 3 of Hopkins county. From an order made in vacation refusing the writ applied for, this appeal is prosecuted. The assignments of error all complain of the refusal of the court to grant the relief sought, each asserting a different legal reason why a contrary judgment should have been entered.

[1] It is contended that the law on the subject (which was enacted in 1917 by the 35th Legislature, c. 60) is void because it is in effect an amendment of the Act of 1893, c. 56, and does not comply with the terms of

section 36 of article 3 of our Constitution. That section is as follows:

"No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length."

In 1893 the Legislature created a Live Stock Sanitary Commission. That law appears as chapter 8 of title 124 of the Revised Civil Statutes of 1911. Among other things it authorized the Live Stock Sanitary Commission to inspect domestic animals for the purpose of ascertaining the presence of contagious and infectious diseases of a malignant character, and to establish and maintain quarantine lines for the protection of stock. It also empowered the commission to prescribe rules and regulations for separating, feeding, and caring for diseased and exposed animals, and, when contagious and infectious diseases were found to exist, to give notice to the Governor, who was required to issue his proclamation fixing the boundaries of a quarantine line around such diseased stock. Many other duties necessary to prevent the spread of contagious and infectious diseases among domestic animals were also enjoined which need not here be mentioned. In 1913 the Thirty-Third Legislature enacted another statute, which modified the former law and added other and new provisions. See Acts of 1913, p. 353. In 1917 the present law on the subject was enacted, and is found in the session acts of that year, beginning with page 107. The caption recites that it is—

"An act supplementing the act creating a Live Stock Sanitary Commission for the State of Texas as defined and described in article 7312, Revised Civil Statutes, and providing for the further protection of the live stock industry of Texas against all malignant, contagious and infectious or communicable diseases; and prescribing the duties of the Live Stock Sanitary Commission," etc.

The caption concludes with the recital that—

"This act is to be cumulative of the act creating a Live Stock Sanitary Commission as provided for in article 7312, Revised Civil Statutes, repealing all laws in conflict herewith, and declaring an emergency."

The first section begins as follows:

"It shall be the duty of the commission provided in article 7312, Revised Civil Statutes, to protect the domestic animals of the state from all malignant, contagious or infectious diseases of a communicable character whether said diseases exist in Texas or elsewhere; and for the purpose it is hereby authorized and empowered to establish, maintain and enforce such protective measures and quarantine lines and sanitary rules and regulations as it may deem necessary, when it shall determine upon proper inspection that such disease exists," etc. Vernon's Ann. Civ. St. Supp. 1918, art. 7314.

The act is quite lengthy, but it is not necessary to quote it further. It modified the articles of the statute referred to by enlarging the powers of the Live Stock Sanitary Commission and providing for the dipping of cattle in counties infected with cattle ticks and sheep scab, and adds other provisions of which no complaint is made. It also repeals the law of 1913. Counsel for appellants argues that such legislation, being amendatory in its purposes, violates the provisions of the section of the Constitution quoted above and is therefore void. The contention is, we think, unsound, as has been decided by our Supreme Court in the following cases: Snyder v. Compton, 87 Tex. 378, 28 S. W. 1061; Henderson v. City of Galveston, 102 Tex. 163, 114 S. W. 108. In the first case cited above, Justice Gainse, in rendering the opinion of the court said:

"It is not meant by this provision that every act which amends the statutory law shall set out at length the entire law as amended. Under such a rule legislation would in many instances be impracticable. This is especially the case in this state, where the existence of the common law is due to statutory enactment. The practice which it was the purpose of the provision in question to prohibit was that of amending a statute by referring to its title, and by providing that it should be amended by adding to or striking out certain words, or by omitting certain language and inserting in lieu thereof certain other words. It was not intended to prohibit the passage of a law which declared fully its provisions without direct reference to any other act, although its effect should be to enlarge or restrict the operation of some other statutes. Similar provisions in other Constitutions have been construed not to apply to implied amendments. People v. Mahaney, 13 Mich. 481; Swartwout v. Railway, 24 Mich. 389; Lehman v. McBride, 15 Ohio St. 573; Shields v. Bennett, 8 W. Va. 74; Ins. Co. v. Taxing Dist., 4 Lea [Tenn.] 644; Baum v. Rapheal, 57 Cal. 361. The statute in question restricts the operation of the former statutes upon the same subject, but we think cannot be deemed as an amendment of such acts within the meaning of the section quoted."

This language makes further argument unnecessary. This holding has been followed in numerous other cases.

[2-4] It is also claimed by the appellants that the law of 1917 is void because it prescribes excessive and unreasonable penalties for its violation and authorizes the taking and damaging of private property for a public use without providing compensation. The penalty prescribed by the law for a failure to dip cattle ranges from $10 to $200. This we do not consider excessive if the law can serve any useful purpose. The material averments of the appellants' petition were met by the sworn answer filed by the appellees, and both sides produced affidavits in support of their respective contentions.

While the appellants testified that their cattle showed evidence of serious injury resulting from having been dipped in the fluid used for that purpose, the evidence offered by the appellees was to the contrary. Under the testimony submitted, the trial court was justified in concluding that cattle ticks existed in all portions of Hopkins county; that such ticks produced fever causing death of many cattle; that the process of dipping in the fluid prescribed was not only harmless to the animals dipped, but it destroyed the ticks and removed the cause of a malignant cattle disease. That being true, the law served a useful public purpose, and its proper enforcement resulted in no injury to private property. Witnesses for the appellees also testified that the injuries to cattle which followed the dipping process were usually the result of improper handling and were not a necessary consequence of the dipping process. The handling of the cattle, under the terms of the law, except when seized on account of the failure of the owners to dip them, was in the hands of the owners or their agents. Appellants insisted that an official inspection and discovery of ticks were prerequisites to the enforcement of this law. Assuming that to be a correct proposition, it devolved upon the appellants to prove the averment that there has been no inspection. The extent of the evidence offered by them was that the stock of the witness who testified had not been inspected and they knew of no official inspection having been made. It has been definitely determined, and we think properly so, that it is not necessary, in making official inspection for the purpose of ascertaining the presence of ticks, that every animal in the county should be inspected. It is sufficient if the inspection made discloses the presence of ticks in the locality or in the county upon some cattle. Trimble v. Hawkins, 197 S. W. 224; Castleman v. Rainey, 211 S. W. 630.

[5] Even if the tick eradication law is void for any of the reasons presented, appellants are not entitled to injunctive relief against its enforcement till it is shown that there is some impending or threatened injury to them or to their property. The law requires stock owners to have their animals dipped, and provides a penalty for a failure to do so. It also authorizes the forcible seizure, for the purpose of dipping, of stock which are not dipped by their owners or custodians. There is no evidence in this record that the appellees, or any of them, were threatening or intending to prosecute the appellants criminally for a failure to dip their stock, or that the proper officers were intending or threatening to seize their stock for the purpose of dipping them.

In that state of the record, we think the application for the injunction was properly denied, and the judgment of the trial court will be affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes