## WESTERN MEDICAL ARTS BLDG. CORPORATION v. BRYAN et al. (No. 2999.)

Court of Civil Appeals of Texas. Amarillo. March 21, 1928.

Rehearing Denied May 2, 1928.

1. Contracts &#9096;346(10)—Petition for architects' fees held based on contract between defendant and purchaser of building substituted for original contract between architects and defendant, and admission of substituted contract did not create variance.

Petition for recovery of architects' fees alleging defendant contracted to pay 2½ per cent. of cost of building not exceeding certain sum for purpose of determining fees, and alleging in trial amendment that purchaser of building, pending construction, agreed with defendant to pay fees based on agreed valuation, which contract was substituted for original contract with architects, held based on contract between defendant and purchaser substituted for original contract, and hence admission of substituted contract in evidence was not error as variance from petition alleged to declare on original contract.

2. Contracts &#9096;363(6)—Architects suing for fees need not allege right of recovery because of fraud in obtaining settlement, to subject consideration under substituted contract to payment of fees.

Where original contract between architects and defendant for fees was alleged to have been set aside and substituted by contract between defendant and purchaser pending construction providing for payment of fees, it was not necessary for architects suing for fees and alleging that settlement was obtained by fraud to expressly allege right by reason of fraud to subject consideration obtained under new contract to payment of their fees, in absence of special exception.

3. Pleading &#9096;16—Pleading which is amendable, and from which matter not specially alleged can be inferred, held good against general demurrer.

Where matter not specially alleged can be inferred from facts pleaded, pleading will be sustained as against general demurrer; and, where defective statement is amendable, pleading is good against general demurrer.

4. Pleading &#9096;428(1)—Objections to pleadings may not be raised by objections to introduction of evidence.

Objections to pleadings, because defective, may not be raised by objections to introduction of evidence because of such defects.

5. Compromise and settlement &#9096;23(2)—In architects' suit for fees alleging settlement was fraudulently procured, evidence of negotiations between defendant and purchaser of building agreeing to pay fees was admissible to show intention to defraud.

In action for architects' fees in which architects alleged fraud by defendant in procuring settlement by concealing sale of building and purchaser's agreement to pay fee, evidence of negotiations between defendant and purchaser wherein defendant was permitted to settle with architects, and wherein purchaser agreed to pay fees, was admissible to show defendant's intent to commit fraud and to explain representations to architects inducing settlement.

6. Evidence &#9096;99—Evidence of facts happening before or after transaction, directly related to subject in controversy, held admissible.

Evidence of facts happening before or after transaction, having direct relation to subject in controversy, is admissible.

7. Trial &#9096;169—Peremptory instruction for defendant held properly denied where petition was not subject to general demurrer.

Where petition for recovery of contractual compensation for services rendered was not

subject to general demurrer, trial court did not err in refusing to give defendant's peremptory instruction for verdict.

**8. Fraud ☞31—Creditor fraudulently induced to accept compromise may retain payment and sue on case for fraud.**

Creditor fraudulently induced to accept compromise may retain payment and sue on case for fraud.

**9. Appeal and error ☞1062(4)—Submission to jury of question of law held harmless error, where court must have reached same conclusion to sustain judgment.**

In architects' suit on contract for fees, finding of jury that defendant was under duty to inform architects of trade of building was matter of law for court alone, but submission to jury was harmless error, where court must have reached such conclusion to sustain judgment for architects setting aside settlement and allowing recovery on contract between defendant and purchaser of building.

**10. Compromise and settlement ☞18(2)— Failure to promptly repudiate settlement sought to be set aside for fraud held immaterial, where contract sued on, under which settlement was made, was not disaffirmed but was complied with.**

In suit on contract for recovery of architects' fees in which plaintiffs sought to set aside compromise as obtained by fraud but maintained suit on contract and did not seek to disaffirm it, fact that plaintiffs did not promptly repudiate settlement was immaterial, where plaintiffs did not disaffirm contract under which settlement was made but proceeded to comply with it.

On Motion for Rehearing.

**11. Judgment ☞252(3)—Trial court could not render judgment for defendant against codefendant, where defendant filed no cross-action against codefendant.**

In suit for architects' fees against defendant and purchaser of building pending construction in which defendant did not allege any liability to it by purchaser for fees and did not file any cross-action against purchaser, trial court had no power to render judgment in favor of defendant for balance of sum withheld by purchaser over amount of judgment, but properly left such sum to future adjustment between defendant and purchaser.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by Ralph Bryan and another against the Western Medical Arts Building Corporation and another. Judgment for plaintiffs, and defendant named appeals. Affirmed.

J. T. Montgomery and Kilgore, Rogers & Montgomery, all of Wichita Falls, for appellant.

Martin & Oneal, of Wichita Falls, for appellees Bryan and Sharp.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee Hamilton.

RANDOLPH, J. Bryan and Sharp, architects, brought suit against the Western Medical Arts Building Corporation and W. B. Hamilton, as defendants.

We will adopt the designation of the parties, for convenience, as adopted in appellant's brief; namely, Bryan and Sharp as plaintiffs, and the Medical Arts Building Corporation as the corporation, and designating the defendant Hamilton by his name.

The Plaintiffs' Petition alleges substantially that the corporation, about March 11, 1926, employed plaintiffs as architects in the construction of an office building in Wichita Falls, Tex., and that under date of March 11, 1926, the corporation entered into a written contract with plaintiffs, and that by the terms of said contract the corporation bound and obligated itself to pay to the plaintiffs, for their professional services in connection with the erection of said building, the sum of 2½ per cent. on the completed cost of the building, exclusive of architects' fees; that in the meaning of the contract, it was contemplated and agreed by both parties, and the said corporation represented to the plaintiffs, that said building would be erected as not less than an 8-story building, and that it might be erected as an 11-story building, and that in either event the plaintiffs were to receive such compensation; that the plaintiffs have performed all services required of them under the contract; that the corporation accepted the drawings, specifications, etc., prepared by plaintiffs and have proceeded with the erection of the building, and, under the provisions of the contract, the corporation paid the plaintiffs three several sums, aggregating the sum of $6,000, in cash. Further, that while the building was under construction, and when the framework was up for the eighth floor, and on or about the 18th of September, 1926, by contract of that date, the corporation sold the building to W. B. Hamilton, and by the terms of said sale Hamilton bound himself to pay the 2½ per cent. architects' fees upon said building, reimbursing the corporation for the fees it had previously paid, and agreeing to pay in cash the balance of the 2½ per cent. on the cost of the building, said costs for the purpose of determining the maximum of the architects' fees not to exceed $750,000, and that it was definitely agreed and understood between the corporation and Hamilton that said building would be built to a height of not less than 11 stories, and that the plaintiffs' plans would be used for that purpose; that after the sale to Hamilton, the corporation sent its president, A. McClory, to Dallas, where plaintiffs lived, and there, by and through representations made by McClory, induced plaintiffs to accept a check for $3,500 as full payment for the amount due them under their contract with the corporation; that such representations

were that the building would not be built to a greater height than 8 stories; that the corporation would not be able to go on with the construction of said work, and that the building would probably stand as a mere framework for a long time, and that plaintiffs would do well to get even $3,000 as their full additional compensation, under the conditions stated by him; that he was their friend, etc.; that plaintiffs believed and relied upon the representations and were thereby induced to accept the $3,500 in full settlement of all amounts due them by the corporation; that said representations were false, and that the unfinished building and the lot upon which it was situated had already been sold to Hamilton, and McClory knew Hamilton would complete the building to 11 stories without delay, and knew of the agreement that Hamilton was to pay the architects' fees; that if plaintiffs had known the facts they would not have accepted the settlement; that after the purchase by Hamilton, he called on plaintiffs for further drawings, and they then learned that the building was to be constructed to 11 stories, and further, that Hamilton recognized his liability for the architects' fees under his contract, based on a cost not exceeding $750,000, and was ready to pay same, and had retained the sum of $15,000 out of the purchase price to protect himself against outstanding claims against the corporation; that under the contract, there is still due these plaintiffs $9,250, after crediting all sums paid by the corporation; and that by reason of such fraud, the compromise settlement is void. Plaintiffs pray that such settlement be set aside and that they recover against both defendants $9,250 for costs and general relief.

The corporation's answer consisted of a general exception, general denial, and a special plea alleging that, at the time of settlement referred to in plaintiffs' petition, nothing was due plaintiffs under the contract, and that the compromise agreement was fair and free from fraud.

By a trial amendment, the corporation also alleged that, after the plaintiffs were fully informed of all the facts material to the entire transaction, they acquiesced in and ratified the settlement and elected to treat the same as binding, and waived any right to rescind and delayed in repudiating the settlement until they could tell whether it would be to their advantage to abide by it or to repudiate it—which facts were pleaded as an estoppel.

Hamilton answered, among other things, that he was a stakeholder, and tenders payment to whomsoever the court may direct.

The trial amendment filed by plaintiffs will be quoted later.

The case was submitted to a jury upon special issues, and on the answers thereto the trial court rendered judgment in favor of the plaintiffs, for $8,875, against both defendants, jointly and severally, and all costs of suit, and further, that Hamilton recover against the corporation all costs of suit, including $200 attorney's fees, and that, upon payment by Hamilton of $8,875 to the plaintiffs, he be discharged from liability to the plaintiffs and defendant corporation. From this judgment, the corporation alone has appealed.

The first questions presented in appellant's brief are presented in various propositions under different forms.

These questions are: First. The plaintiffs having declared upon a written contract providing for the consideration of 2½ per cent. upon the completed cost of the building, the contract introduced in evidence and objected to by them, providing for the payment of $6,000 in money and the payment of the remainder in second lien bonds, was inadmissible in evidence, because it was a variance from the contract pleaded. Second. It was error in the trial court to admit in evidence the contract between the corporation and Hamilton, because it was based upon a contract which was inadmissible for the reasons stated above.

We concede the soundness of appellant's proposition that the law requires that the allegata and probata must correspond to render evidence admissible, and that the proof of an essential fact not averred will not sustain a judgment, and also concede the correctness of the decision cited by it to sustain such proposition, but we cannot agree with appellant that the plaintiffs' petition is subject to the objection stated or that the interpretation given it is correct. In other words, we do not think that the petition can be said to be a declaration upon a contract payable in money. It is true that the petition alleges that the consideration of the contract was 2½ per cent. on an estimated cost of $750,000, but before the trial or during its progress the court granted the plaintiffs leave to file a trial amendment, which alleges:

"That the contract of sale of September 18, 1926, by and between the Western Medical Arts Building Corporation and the defendant W. B. Hamilton, where it says: 'It being understood that party of the second part agrees to pay the architects herein referred to 2½ per cent. as a fee for their services, as provided for in contract between the party of the first part and Bryan and Sharp, architects,' meant to and does provide, and it was the understanding of all parties to the contract that said provision means and provides, that said fees to the architects were to be paid and the said W. B. Hamilton agreed to pay the same in cash; that said fees were to be based on an agreed valuation of the cost of said building at $750,000 for an 11-story building; that said contract was accepted by the Western Medical Arts Building Corporation as meaning that said architects' fees should be so paid by cash and to be based upon said valuation for said building completed to 11 stories; that to said extent said contract changed and was substituted for the provisions of the contract of May 11, 1926,

between the defendant Western Medical Arts Building Corporation and the plaintiffs Bryan and Sharp, in so far as said contract provided for part of the architects' fees to be paid in second mortgage bonds upon said building, and in so far as the maximum amount of the costs of said building for the purpose of fixing the architects' fees was not limited to $750,000 for said costs; that said contract was delivered by said W. B. Hamilton, and accepted by said defendant corporation upon the understanding and with the understanding that said architects' fees were to be paid in cash and to said extent."

[1] It will be seen from the pleading, as a whole, considering the trial amendment as a paragraph of the original petition, that it is clearly alleged that the original contract was substituted, as to the terms of payment and the character of the consideration, by the subsequent contract between the corporation and Hamilton, and that it is alleged that the corporation accepted and agreed to such new consideration and method of payment. The prayer of the original petition, of which the trial amendment became a part, is a general prayer for the recovery of the sum of $9,250 against both defendants and for general relief. Therefore, giving the interpretation to the petition which the allegations indicate and permit, the petition is a declaration upon the contract between the corporation and Hamilton, which is alleged to have been substituted for the original contract in the respects noted.

[2] It is also true that the pleading, as a whole, contains no express allegations which asserts the plaintiffs' rights, by reason of the alleged fraud, to subject the consideration obtained under the new contract, to the payment of their fees, but as the original contract was alleged to have been set aside and substituted by another, it was not necessary to have alleged this, in the absence of a special exception. Whaley v. Thomason, 41 Tex. Civ. App. 405, 93 S. W. 213.

[3] Where a matter not specially alleged can be inferred from facts pleaded, such pleading will be sustained as against a general demurrer; and, where such defective statement is amendable, such pleading is good against a general demurrer. Northwestern Ins. Co. v. Woodward, 18 Tex. Civ. App. 496, 45 S. W. 185 (writ denied).

[4] Objections to pleadings, because defective, may not be raised by objections to the introduction of evidence, because of such defects. Pyron v. Butler, 27 Tex. 271; Patterson & Wallace v. Frazer (Tex. Civ. App.) 79 S. W. 1077; Tillman v. Fletcher, 78 Tex. 673, 15 S. W. 161.

Where plaintiff filed no exceptions to the sufficiency of an answer, pleading a waiver of a provision in the contract sued on, it could not object to the admission of evidence to prove such waiver on the ground that such defense was not specifically averred. Colorado Canal Co. v. McFarland & Southwell (Tex. Civ. App.) 94 S. W. 400.

The plaintiffs in this cause having alleged the substitution of the corporation's contract with Hamilton for the original contract, as stated, and having sought a recovery upon such substituted contract, the intendment of such pleading was that the plaintiffs were legally and equitably entitled to assert their claim to be subrogated to the consideration named in the Hamilton contract. Hence we overrule all propositions and assignments charging error in the admission of the two contracts in evidence.

[5] The contract between the corporation and Hamilton provided for Hamilton to pay the architects' fees—2½ per cent. on the cost of the building, not to exceed $750,000. The plaintiffs allege this as a basis for their charge of fraud, which consisted of the corporation concealing the fact of the trade with Hamilton and his contract to pay the architects' fees in cash, and the representations as to the building not being completed beyond 8 stories, etc. For the purpose of showing the fraud, it was necessary for the surrounding circumstances and preliminary negotiations to be introduced in evidence, to establish McClory's intent to commit fraud, and to explain his conduct and representations to the plaintiffs. Hamilton told McClory that he was going to pay the architects' fees in cash, and McClory then asked Hamilton if it would be all right for him to settle with the architects, and Hamilton told him that it was, so long as he got complete architectural services, which McClory assured him he would get, that he, McClory, would personally see to this. McClory made the further statement that the second mortgage bonds would not be worth as much cash. In view of the compromise settlement wherein the plaintiffs were paid $3,500 by reason of McClory's representations, this evidence was admissible.

[6] Evidence of facts happening before or after a transaction, having direct relation to the subject in controversy, is admissible. Horton v. Reynolds, Adm'rs, 8 Tex. 284, 288; Hunter, Evans & Co. v. Lanius, 82 Tex. 683, 684, 18 S. W. 201.

[7] As stated above, plaintiffs' petition was not subject to a general demurrer, and therefore the trial court did not err in refusing to give to the jury the defendant corporation's peremptory instruction for a verdict, and all propositions and assignments setting up the failure of the court to give such peremptory instruction are overruled.

[8] A creditor fraudulently induced to accept a compromise may retain the payment and sue on the case for fraud. Grabenheimer v. Blum, 63 Tex. 369, 376.

This suit is one for the recovery of contractual compensation for services rendered. While the plaintiffs set out the fraudulent conduct and representations made by the cor-

poration in inducing the compromise, and ask that such compromise be set aside, they nevertheless maintain their suit upon the contract and do not seek to disaffirm it, but, on the contrary, pray for judgment for the services rendered under the contract.

Upon the issues submitted by the court to them, the jury found that the defendant corporation, acting through its president, A. McClory, represented to the plaintiffs that the defendant corporation was in a bad condition financially, and probably could not complete the building, and that the building might stand uncompleted for a considerable time; that the plaintiffs believed said representations and were induced thereby to accept the $3,500 check as the balance on their architects' fees; that said representations were false; that the plaintiffs would not have accepted the check in compromise on the building completed as 8 stories, nor would they have accepted same on the building completed as an 11-story building; that plaintiffs accepted the check of the corporation under the understanding that the settlement was for their work and the use of their plans and specifications on an 8-story building. Also, in answer to special issues requested by the defendant corporation, the jury found further that, after the settlement between the plaintiffs and the defendant corporation, and after plaintiffs were possessed of all knowledge material to the entire transaction, plaintiffs did not elect to affirm the settlement and looked to Hamilton for a new employment; and that, after the plaintiffs were fully informed as to the sale to Hamilton, they did not promptly repudiate the settlement made and notify the defendant corporation of their repudiation of same.

[9] The finding of the jury that the corporation's duty was to inform the plaintiffs of the trade with Hamilton was a matter of law, which was for the court alone, but it is a conclusion which the court must have reached to sustain his judgment; hence its submission to the jury was harmless error.

[10] The fact that the plaintiffs did not promptly repudiate the settlement becomes and is immaterial in view of the further fact that they did not disaffirm the contract under which the settlement was made, but proceeded to comply with it, that they might be able to earn the compensation therein stipulated for a completed contract—for which they here sue.

Having considered all propositions and assignments presented by appellant, and finding no reversible error, we affirm the judgment of the trial court.

## On Motion for Rehearing.

[11] This suit was one to set aside a settlement of contractual liability on the part of the appellant, which settlement was induced by the fraudulent representations of appellant.

The appellant does not allege any liability to it by its codefendant W. B. Hamilton, and does not pray for any judgment against him at any event. The judgment rendered in favor of Bryan and Sharp, plaintiffs, is a joint and several judgment against the defendants Medical Arts Building Corporation and W. B. Hamilton. Further, the judgment provides that upon the payment by W. B. Hamilton to the plaintiffs herein of the sum of $8,875, as provided for in said judgment, he be discharged from any other and further liability to the plaintiffs and be discharged from any liability to the defendant Western Medical Arts Building Corporation, upon his contract to pay the fees of the architects, *except as to the payment of the balance of the sum of $12,750, less the cost and attorney's fees.*

The Medical Arts Building Corporation not having filed any cross-action against its codefendant Hamilton, to recover the balance over and above the $8,875 which Hamilton had agreed to pay, the trial court had no power to render judgment for this balance, but properly left it to future adjustment between the Medical Arts Building Corporation and Hamilton.

The appellant's motion for rehearing is therefore overruled.