GARITTY et al. v. HALBERT, Mayor, et al.
(No. 8568.)

(Court of Civil Appeals of Texas. Dallas. Oct. 29, 1921. Rehearing Denied Dec. 3, 1921.)

1. Appeal and error ⬳745—Assignments of error brought up in transcript where motion for new trial is unnecessary.

Where it is not necessary to file motion for new trial, assignments of error can be filed in the trial court and brought up in the transcript.

2. Appeal and error ⬳248—What assignments will be considered in absence of proper exceptions to rulings.

Cross-assignments of error which present fundamental error will be considered, although no proper exceptions have been reserved to the rulings of the court complained of, but cross-assignments not presenting such error will not be considered under District and County Court Rules, No. 101, and Act 1913, c. 136, § 1, amending Rev. St. 1911, art. 1612 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1612).

3. Appeal and error ⬳748(1), 766—Errors apparent on face of record considered.

Errors of law assigned by appellee apparent on the face of the record will be considered regardless of sufficiency of assignments of error and brief, under Rev. St. 1911, art. 1612, as amended by Acts 1913, c. 136, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1612), and rule 101 for district and county courts.

4. Municipal corporations ⬳46—On contest of charter amendment election, reply not jurisdictional, and may be filed after prescribed time.

To confer jurisdiction on the district court to hear and determine a contest of election to amend the charter of a city of more than 5,000 population it was necessary for contestants within 30 days after return day of such election to give contestees notice thereof in writing and deliver to them, their agents or attorneys, a written statement of the grounds on which contestants relied, Rev. St. 1911, art. 3051, being mandatory, but under article 3052 the reply is not jurisdictional, and a failure to comply therewith is only an irregularity, and court may refuse to strike it out, though not filed in time, in absence of injury to contestants.

5. Municipal corporations ⬳46—Omission to allege filing of statement of grounds of contest of charter amendment election, held immaterial.

Although service of notice of contest and statement of grounds thereof upon contestees within 30 days was essential to confer jurisdiction of an election contest on the trial court under Rev. St. 1911, art. 3051, it was not necessary that contestants make a formal allegation in their petition to the effect that they served such notice and statement, where it appeared from the record that such requirements were in fact complied with.

6. Municipal corporations ⬳46—Ordinance held not to require voters to vote affirmatively or negatively on more than one subject submitted.

An ordinance of the city of Corsicana submitting in one ballot the amendment of sections 41 and 45 of the city charter, so as to authorize the city to levy a tax to the full constitutional limit, of which a certain amount should be for the support of the public schools, and a certain amount for the establishment and support of a public library, was not subject to the objection that it required the voters in casting their ballots to vote "Yes," or "No" on more than one subject, the sections to be amended dealing with the subject of taxation, and the amendment relating to apportioning money realized by taxation.

7. Municipal corporations ⬳46—Misconduct invalidating charter amendment election must be shown to have changed result.

Conspiracy, intimidation, fraud, or violence will not warrant the setting aside of charter amendment election unless it is shown that they have been sufficient either to change the result, or that by reason thereof the true result cannot be ascertained with certainty from the returns.

8. Municipal corporations ⬳46—Who may vote to amend charter of city.

A person qualified to vote to amend the charter of the city of Corsicana, a city of more than 5,000 population, need not "be a qualified property taxpayer, and own property subject to taxation."

9. Municipal corporations ⬳46—Election held not one solely for the purpose of levying a tax for support of school.

Mere apportionment of a portion of tax voted upon in amending the charter of the city of Corsicana did not have the effect to change the purpose of the election from that to amend the charter to an election for the purpose of levying a tax only for the support and maintenance of schools as provided for in Const. art. 11, § 10, the only method of amending such charter being that provided by Const. art. 11, § 5, there being no conflict in the language employed in Const. art. 7, § 3, article 8, § 9, and article 11, §§ 5, 10, and the requirement of two-thirds vote did not apply, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a, 1096b.

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Proceeding by James Garitty and others against J. L. Halbert, Mayor, and others, to contest the validity of an election within the city of Corsicana. Judgment for defendants, and plaintiffs appeal. Affirmed.

Richard Mays, W. W. Ballew, and J. F. Stout, all of Corsicana, for appellants.

Hawkins Scarborough, Callicutt & Johnson, and Fred Upchurch, all of Corsicana, for appellees.

VAUGHAN, J. This is the second appeal in this case. For opinion of this court on

former appeal, see 225 S. W. 196. The former appeal, only involving contempt proceedings against appellees on account of alleged violation of writ of injunction, including motion for mandamus, and not dealing with the questions presented on this appeal, will not be further referred to in this opinion.

This is a proceeding to contest the validity of an election held within the city of Corsicana on the 18th day of May, 1920, under and by virtue of the following ordinance passed by the commission of the city of Corsicana:

"An ordinance proposing an amendment to the charter of the city of Corsicana, Texas, as the same was adopted December 11, 1917, by amending section 41 of said charter so as to authorize the commission of said city to levy a tax not exceeding 75 cents on the one hundred dollars assessed valuation of all property, or so much thereof as may be necessary, for the support and maintenance of public free schools of said city, and amending section 45 of said charter so as to authorize the commission of said city to levy and collect taxes not exceeding two and one-half per cent. of the assessed values of the property in said city, of which amount 75 cents or so much thereof as may be necessary on the one hundred dollars shall be levied for the maintenance and support of the public free schools, and five cents, or so much thereof as may be necessary, on the one hundred dollars shall be levied for the establishment, maintenance and support of a free public library.

"Be it ordained by the commission of the city of Corsicana, Texas:

"1. That sections 41 and 45 of the charter of the city of Corsicana, Texas, as the same existed after its adoption on December 11, 1917, by a majority vote of the qualified voters of said city, being a charter adopted by said city under the provisions of the Constitution and laws of the state of Texas commonly known as the 'home rule bill,' in which it is provided for the government and management of the affairs of said city, that said sections 41 and 45, respectively, be so amended as hereafter to read as follows:

" 'Sec. 41. The commission and officers of said city shall have nothing to do with the city schools, except the levy of taxes herein provided for, for the purpose of maintaining said schools, and the collection thereof by the city assessor and collector of taxes. The commission shall have no discretion in fixing the rate at which taxes shall be assessed and levied each year for the benefit of public free schools, provided such rate shall not exceed 75 cents on the one hundred dollars assessed valuation of all property subject to taxation within said city, but shall assess and levy the rate fixed annually by the board of school trustees, and it shall become the duty of the commission upon requisition of the board of school trustees to annually levy and collect said taxes as other taxes.'

" 'Sec. 45. The commission of the city of Corsicana shall have the power, and it is hereby authorized to annually levy and collect taxes not exceeding 2½ per cent. of the assessed values of all real and personal property in the city not exempt by law, and of the taxes so levied 75 cents, or so much thereof as may be necessary, on the one hundred dollars assessed values may be for the maintenance and support of the public free schools of the city, and five cents, or so much thereof as may be necessary, on the one hundred dollars assessed value of all property in the city, subject to taxation, may be for the establishment, maintenance and support of the free public library. The balance of said taxes not levied for the maintenance and support of the public schools and library shall be apportioned as the commission shall direct.

"2. That all parts of the existing city charter of the city of Corsicana in conflict herewith, and especially sections 41 and 45, as the same now exist, are hereby repealed and sections 41 and 45 as the same herein read, be substituted therefor."

Appellants (contestants and plaintiffs below), James Garitty, Aaron Ferguson, A. J. Wareing, C. C. Walton, J. F. Stout, W. H. Barth, H. C. Ballew, W. B. Gray, J. W. A. Clark, Geo. F. Baum, Edgar T. Wareing, L. C. Polk, W. W. Ballew, T. M. Cobb, W. A. Babb, A. Weidman, · C. H. Graves, Simon Daniels, G. P. Thompson, W. H. White, B. G. Whitten, W. R. Smith, Walter Brassell, Roy Canady, Joe Wilson, H. J. Breithaupt, and B. C. Fortson, filed their original statement of grounds of contest of election with prayer for injunction in the district court, Navarro county, June 12, 1920, naming appellees, J. L. Halbert, W. M. Peck, N. F. Garrett, John S. Murchison, J. L. Marshall, J. A. Harper, Geo. W. Boyd, the city of Corsicana, in its corporate capacity, and J. D. Jackson, Ed M. Polk, E. S. McGee, C. H. Delafosse, W. N. Johnson, Perry McCammon, and R. N. Elliott, and the board of school trustees of the city of Corsicana, in its corporate capacity, as contestees and defendants. Notice of said contest was served on J. D. Jackson and on J. A. Harper, secretary of the city of Corsicana, June 10, 1920, and on J. L. Marshall, commissioner and J. L. Halbert, mayor of the city of Corsicana, June 12, 1920, said original contest in part alleging:

"That on May 31, 1871, the city of Corsicana was granted a special charter by the Twelfth Legislature of the state of Texas. That on June 16, 1875, under legislative authority, said city accepted the general provisions of the law relating to cities of its class, to wit, 1,000 inhabitants and over. That in 1903, said city having a population in excess of 1,000 inhabitants, the Legislature granted it a special charter under which it was governed until December 11, 1917, on which date it adopted a new charter under the provisions of the then article 11, § 5, of the Constitution, and under which, together with amendments thereto, it has been and now is governed. That on February 1, 1881, under an act of the Legislature approved August 19, 1876, and by authority of article 11, ———, of the Constitution, said city took over and acquired exclusive control of the public schools within its corporate limits, and it has continued to be and is now a separate and independent school district of that class created

under said article and section of the Constitution relating to incorporated cities only. In section 38 of the new charter so adopted it is provided that the city of Corsicana is, and shall continue to be and remain, an independent school district, and as such has, and shall continue in, the exclusive control of the public free schools within the territorial limits of the city. That the commission of the city of Corsicana by ordinance proposed that sections 41 and 45 be repealed, and instead thereof the following be adopted: [Here follows the proposed amendments to sections 41 and 45 of said charter as set out above.] That accordingly said Halbert, mayor, acting under pretended authority of the commission, issued a proclamation calling an election to be held within the corporate limits of the city on the 18th day of May, 1920, to determine whether or not the qualified voters of said city shall adopt said amendment to said existing charter as the same was adopted December 11, 1917. That in accordance with said proclamation said commission, acting in conjunction with said school board, formulated and issued the following official ballot, which was exclusively used by those voting in said election:

" 'Official Ballot.

" 'Corsicana, Texas, May 18, 1920.

" 'Shall the charter of the city of Corsicana, as adopted on December 11, 1917, for the government and management of the affairs of said city, be amended by amending sections 41 and 45 so as to authorize the Commission of said city to levy a tax of two and one-half per cent. on the one hundred dollars assessed valuation of all property in said city, of which amount not exceeding 75 cents on the one hundred dollars shall be for the support and maintenance of the public free schools of said city, and not exceeding five cents on the one hundred dollars assessed valuation of all property in said city may be for the establishment, maintenance and support of the free public library?

" 'YES.

" 'NO.'

"That the subject-matter of said 'amendment' contained four distinct propositions, to wit: (1) Authorizing the commission to increase the ad valorem tax rate to the full constitutional limit, that is, from 1.55 to 2½ per cent. on the $100 of assessed valuation; (2) authorizing the commission to levy out of said maximum tax rate of 2½, 75 cents on the $100 of valuation, instead of 50 cents, for the support of public free schools; (3) should a less sum than 75 cents be levied for school purposes, the difference to be used and appropriated by the commission for non-school purposes; and (4) authorizing the commission to levy five cents on the $100 valuation for the support of the public library. That each of said propositions are and should have been the subject of separate amendments. That, to lawfully amend the charter, they were required to be the subject to separate amendments, in order that the voters could exercise their legal and highly important right to exercise their judgment and wish as to them separately."

Said contest as originally filed contains allegations showing that the legality of said election was challenged on three grounds:

First, that the proposed amendment contained four subjects, in violation of the law which requires that—

"Every amendment or amendments submitted must contain only one subject, and in preparing the ballot for such amendment or amendments it shall be done in such a manner that the voter may vote 'Yes' or 'No' on any one amendment or amendments, without voting 'Yes' or 'No' on all of said amendments."

Second, that the result of the election was brought about through fraudulent acts and conduct on the part of appellees, and that on account of such fraudulent acts and conduct a great many voters were intimidated and otherwise unduly and illegally influenced to vote in favor of said proposed amendment to such an extent as to prevent a full and fair expression of the will of the electors participating in said election, whereby the result of said election was fraudulently obtained in favor of said proposed amendment.

Third, that about 325 illegal votes were cast in said election in favor of said proposed amendment, and that only by counting such illegal votes would said proposed amendment receive the number of votes necessary for its adoption.

On the 6th of July, 1920, appellees filed their original answer to said contest and petition filed in the district court as above stated, and thereafter filed first supplemental answer and trial amendment, the pleadings so filed consisting of general and special demurrers, general and special denials to the allegations contained in pleadings filed by appellants, and special plea alleging that certain persons named in said pleadings voted at the election against the amendment to the city charter who were illegal voters, the grounds of their disqualification to participate in said election being set out in such plea.

On the trial of the case in the court below the following facts material to the disposition of this appeal were established:

An election was duly ordered by the city commission of the city of Corsicana to be held on the 18th day of May, 1920, to determine whether or not section 41 and section 45 of the charter of the city of Corsicana should be amended, said original sections being as follows:

"Sec. 41. The commission, and the officers of said city shall have nothing to do with the city schools, except the levy of the taxes herein provided for, for the purpose of maintaining said schools, and the collection thereof by the city assessor and collector of taxes. The commission shall have no discretion in fixing the rate at which taxes shall be assessed and levied each year for the benefit of the public free schools, provided that such rate shall not exceed one half (½) of one per cent. of the value of the property subject to taxation, but shall assess and levy the rate fixed annually by the board of school trustees, and it shall become the

duty of the commission, upon the requisition of the board of school trustees, to annually levy and collect said taxes as other taxes."

Section 45, under the head of "Title of Taxation," was as follows:

"The commission shall have the power and it is hereby authorized to annually levy and collect taxes, not exceeding one and $55/100$ (1.55) per centum of the assessed value of all real and personal property in the city not exempt by law, and of the taxes so levied, fifty cents, or so much thereof as may be necessary, on the one hundred dollars assessed value may be for the maintenance and support of the public free schools of the city, and five cents, or so much thereof as may be necessary, on the one hundred dollars assessed value of all property in the city subject to taxation may be for the establishment, maintenance, and support of the free library. The balance of said taxes not levied for the maintenance, and support of the public schools and library, shall be apportioned as the commission shall direct, provided that for any special improvement, or any, or all of the purposes stated in section 44 hereof, the commission shall have the power to annually levy and collect, not exceeding two years by virtue of one election, an additional tax on all taxable property in said city not exempt by law, if a majority of the qualified property taxpayers of said city shall have voted in favor of such at an election duly ordered for such purpose, by resolution of the commission, as in other elections, the whole number of votes to be determined by the number voting at this election."

That said election was held on that date under authority of the ordinance passed and approved by said city commission on the 6th day of April, A. D. 1920, above set out.

That on May 18, 1920, and long prior thereto, and up to the date of said election, Corsicana was a city of 10,000 inhabitants or more. Immediately after said election was ordered, an intense campaign was inaugurated by contestees and many other citizens of Corsicana advocating the adoption of the proposed amendment, which campaign was continued throughout the period of time from the date said election was ordered up to the date of said election, to wit, May 18, 1920, with much activity and persistence, among other things including parades on the part of the school children, and the publication of articles in the Daily Sun, a newspaper published in Corsicana, advocating the adoption of said amendment.

The evidence fails to establish any of the allegations and charges of conspiracy, bribery, intimidation, and threats of social and religious ostracism, and, if it be conceded that any of such fraudulent influences did in fact exist, it is not shown that any of the electors were influenced thereby in casting their vote in said election.

Returns of said election show that there were cast thereat a total of 757 votes; that of that number 512 were cast in favor of the amendment to the city charter, and 245 were cast against said amendment, on the face of said returns showing a majority of 267 votes to have been cast in favor of said amendment. Of the 512 persons voting in favor of said amendment, 102 had paid poll tax, but had not rendered or paid any property tax, nor were they assessed for taxes for the year 1919. Nine had not paid city poll tax or city property tax nor rendered any property for taxes for 1919, nor were they assessed for city tax for 1919, and their names did not appear upon the city rolls. They had only lived in Corsicana for a little more than six months before the election on May 18, 1920. However each one owned property within the city limits of Corsicana subject to taxation on the 1st day of January, 1920. Two had not paid poll tax or property tax for 1919, nor had they rendered any property nor been assessed for taxes on any property for 1919, but had certificates of exemption on the ground that they became 21 years of age after January 1, 1919. Each owned property within the city limits of Corsicana subject to taxation on January 1, 1920. Forty-one had not paid poll tax nor been assessed for or paid property tax for 1919. Each had been in the military service of the United States, and had only received discharge from such service during the year 1919, and voted as such returned soldiers by virtue of certificate of discharge held by them. Each owned property within the city limits of Corsicana subject to taxation on January 1, 1920. Otherwise each one of the above 154 persons who voted at said election in favor of said amendment were qualified electors and entitled to vote at elections held for general purposes. Of the 245 persons voting against said amendment, 15 were over 61 years of age and failed to obtain an exemption certificate as required by articles 2943 and 2953, Revised Civil Statutes 1911, and 6 were not property taxpayers, and one was not a property taxpayer and had failed to pay city or county poll tax. Otherwise each one of the above 22 persons who voted at said election against said amendment were qualified electors and entitled to vote at elections held for general purposes.

The trial of the case without the intervention of a jury resulted in a judgment being rendered by the trial court in favor of the validity of said election, and the proceedings leading up to the rendition of such judgment are before us through proper assignments of error for review.

Appellants object to the court considering cross-assignments of error contained in appellees' brief on pages 125 to 143, inclusive, upon the following grounds:

First, that "appellees did not except to any of the rulings complained of, preserved no bills of exception thereto, either formally or in decrees, of which complaint is made, and no motion for new trial complaining of any errors committed against them by the trial court was

filed or presented in the trial court"; second, that "none of the cross-assignments of error are entitled to consideration for the reason the pages of the record on which they can be found are not stated"; third, "that none of the assignments are entitled to consideration upon the further ground that they are improperly briefed, in that the statements made under the assignments and the several propositions are argumentative, and the record is not cited in support of the statements made, and the court is required to examine a voluminous record in order to ascertain whether the assignments have merit."

Rule 101 for district and county courts in part provides:

"And the appellee or defendant in error, may file cross-assignments with the clerk of the trial court, which assignments may be incorporated in his brief and need not be copied in the transcript."

[1] Acts of 1913, p. 276, § 1, amending article 1612, Revised Statutes 1911 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1612), relating to assignments of error, provides that—

"An assignment shall be sufficient which directs the attention of the court to the error complained of."

In order to perfect the appeal in this case, it was not necessary for a motion for new trial to be presented and acted upon by the trial court and, where it is not necessary to file motion for new trial, assignments of error can be filed in the trial court and brought up in the transcript. See Cornelius v. Harris, 163 S. W. 346.

[2] It is true that, in so far as disclosed by the record, appellees did not reserve proper exceptions to the rulings of the court complained of in cross-assignments. This presents the most serious phase of the objection to such assignments being considered, and but for the fact that on careful investigation of the law applicable to such proceedings we have reached the conclusion that cross-assignments of error Nos. 1, 2, 3, 7, and 8 present fundamental error, same would not be considered, and the other cross-assignments, not presenting such error, will not be considered, and to that extent appellants' objections thereto will be sustained.

[3] As we view the case in reference to the cross-assignments to be considered, same direct our attention to alleged errors of law apparent on the face of the record, and therefore, regardless of the sufficiency of the assignments and appellees' brief, conceding that same may be defective in the respects alleged by appellants, we feel that a due regard for the administration of the law in order to reach the ends of justice require that same be considered, and in this conclusion we are supported by the following authorities: Arno Co-operative Irr. Co. v. Pugh, 177 S. W. 991; Stephenville, N. & S.

T. Ry. Co. v. Wheat, 173 S. W. 974; Holloman v. Black, 188 S. W. 973; First Nat'l. Bank of Lafayette, Ind., v. Fuller, 191 S. W. 830; Magee v. Paul, 159 S. W. 325.

[4] Appellants' first assignment of error challenges the correctness of the ruling of the trial court in refusing to strike out the answer and other pleadings of contestees replying to contestants' notice of contest because not served upon contestants or filed within the time required by law. Appellants' notice of contest was served upon appellees on June 10 and 12, 1920. Appellants' petition of contest was filed with the clerk of the district court of Navarro county on June 12, 1920, during sessions of the April term, 1920, of said court. Injunction was issued and served on appellees June 12, 1920, contestees' original answer not being filed until appearance day of the succeeding term of court, to wit, July 6, 1920, and contestees' first supplemental answer and trial amendment was filed on August 6, 1920. The trial of the case commenced on August 5, 1920, being the first term of court convened after the close of the term of court in session at the time said petition was filed. In order to confer jurisdiction on the district court of Navarro county to hear and determine the contest of the election held on May 18, 1920, to amend the charter of the city of Corsicana, it was necessary for contestants within 30 days after return day of such election to give contestees notice thereof in writing, and deliver to contestees, their agents or attorneys, a written statement of the grounds on which contestants relied to sustain such contest, the provisions of the law in this respect being mandatory and cannot be waived, and without complying with said provision the district court would be without jurisdiction to hear and determine the contest. Revised Civil Statutes 1911, art. 3051; Cauthron v. Murphy, 61 Tex. Civ. App. 462, 130 S. W. 671; Norton et al. v. Alexander et al., 28 Tex. Civ. App. 466, 67 S. W. 787; Wright v. Fawcett, 42 Tex. 203. However, a different rule of construction applies to article 3052, Id., which directs the time within which reply to notice of contest should be filed. The filing of such reply is not in any respect jurisdictional, for same does not invoke the power of the court, but is simply a reply to the proceedings instituted by the notice of the contest served in the manner and form provided for by article 3051, supra, and, not being jurisdictional, a failure to comply with the provisions of said article 3052, could at best only be an irregularity, and, unless some injury could be shown resulting to the opposite party by the failure to comply with such provision, the error in this respect could not be other than immaterial. Accordingly appellants' first and second assignments of error are overruled. In support of the conclusion reached by us in reference to these assignments we refer to the following

authorities: Roach v. Malotte, 23 Tex. Civ. App. 400, 56 S. W. 701; Calverley v. Shank, 28 Tex. Civ. App. 473, 67 S. W. 434; Messer et al. v. Cross et al., 26 Tex. Civ. App. 34, 63 S. W. 169; Norton v. Alexander, 28 Tex. Civ. App. 466, 67 S. W. 787; Martin v. Mitchell, 32 Tex. Civ. App. 385, 74 S. W. 567; Mercer v. Woods, 33 Tex. Civ. App. 642, 78 S. W. 15. Therefore we conclude that the court did not err in refusing to sustain appellants' motion to strike out the answer and other pleadings of contestees.

[5] We deem it advisable to here dispose of appellees' seventh cross-assignment of error calling into question the correctness of the trial court's ruling in refusing to sustain the general exception of the contestees, and in refusing to dismiss the proceeding filed by the contestants. The general exception urged by contestees is based upon the proposition that the petition of the contestants (appellants), not alleging that a written notice of the contest of said election had been delivered to the contestees before the filing of said petition, and within the 30 days required by law, failed to disclose that the trial court had jurisdiction, and that the error to affirmatively allege the facts showing such jurisdiction subjected the petition to a general demurrer. The record clearly shows that the election was held on the 18th day of May, 1920, that on the 10th and 12th days of June, 1920, contestants served on contestees a notice of such contest in writing, containing a statement of the grounds on which contestants relied to sustain their contest, and that appellants' petition contesting said election was filed with the clerk of the district court of Navarro county on the 12th day of June, A. D. 1920. An examination of the pleadings of appellants fails to disclose an affirmative allegation that a written statement of the grounds on which contestants relied to sustain their contest of said election was served on contestees within 30 days from the return day of said election. From an examination of the authorities we have reached the conclusion that, although a compliance with said requirements is essential to confer jurisdiction on the trial court, nevertheless, where it appears from the record of the proceedings that such requirements were in fact complied with, jurisdiction will thereby attach; and, as the record in this respect clearly establishes the fact that the requirements of article 3051, supra, were sufficiently complied with, we therefore hold that it was not necessary for a formal allegation to be made in appellants' pleadings in order to show that such jurisdictional requirements had been complied with; therefore the action of the court in overruling appellees' general exception to appellants' pleadings is sustained. Article 3051, Revised Statutes 1911; Cauthron v. Murphy, 61 Tex. Civ. App. 462, 130 S. W. 671; Moore et al. v. Commissioners' Court of Titus County, 192 S. W. 805; Wright

v. Fawcett, 42 Tex. 203; Lindsey v. Luckett, 20 Tex. 516.

We are aware of the opinion in the case of Bassel v. Shanklin, 183 S. W. 105, which apparently on its face indicates a holding that the petition must contain the allegations showing the existence of jurisdictional facts, but a careful examination of said opinion as well as the authorities cited therein does not disclose a holding to the effect that the existence of jurisdictional facts must be made to appear from a formal allegation contained in the petition of contest.

[6] Appellants' fourth, fifth, and sixth assignments of error and the respective propositions thereunder assail the validity of the election on the ground that the ordinance passed by the city commission of Corsicana providing for said election and the official ballot used in such election submitted more than one subject to the voters at said election, requiring such voters in casting their ballots to vote "Yes" or "No" on all of such subjects thus submitted. The election as ordered was to amend sections 41 and 45 of the charter of the city of Corsicana; said original sections and the proposed amendments thereof being as hereinabove set out. The original sections 41 and 45 deal with the subject of taxation, whether read separately or collectively. An analysis of said original sections 41 and 45 will clearly demonstrate that the subject embraced within said sections is one of taxation, although apportioning the purposes for which the money realized by such taxation may be appropriated and used. This apportionment or division cannot create a subject for each apportionment, especially where each division relates to but one subject, namely, that of taxation, as in this instance. At best, it can only be said that such apportionments are related propositions each forming a part of one subject—taxation.

In the case of O'Leary v. Cook County, 28 Ill. 534, the word "subject" is declared to signify "the thing forming the groundwork. It may contain many particulars which grow out of it, and are germane to it, and which, if traced back, will lead the mind to it as the generic head. For instance, in legislation the incorporation of a bank, * * * college, etc., the subject, and such particulars, as will be subservient to such an incorporation, are germane to it, and properly included in the law." In the cases of Breen v. Ry. Co., 44 Tex. 305, and Howth v. Greer, 40 Tex. Civ. App. 552, 90 S. W. 211, it is held that it is a sufficient compliance with this provision of the Constitution (meaning one subject), if the law has one general subject which is fairly indicated by its title, though it may embrace different subjects which are connected with or appropriate for the accomplishment of this general object.

It is held in the case of Tadlock v. Eccles, 20 Tex. 792, 73 Am. Dec. 213, that the inten-

tion of this provision of the Constitution was to prevent embracing in one act, having one ostensible object, provisions having no relevancy to that object, but really designed to effect other and wholly different objects, and thus to conceal and disguise the real object proposed by the provisions of the act, under a false or deceptive title. In support of the above rule of construction the following authorities are cited: Duncan v. Taylor, 63 Tex. 645; Borden v. Rice & Irrigation Co., 98 Tex. at page 507, 86 S. W. 11, 107 Am. St. Rep. 640. We therefore feel constrained to overrule appellants' fourth, fifth, and sixth assignments of error.

[7] Appellants' thirty-first assignment of error challenges the judgment of the trial court upholding election under investigation because of alleged fraudulent conspiracy and combination entered into by J. E. Blair, superintendent of schools, the teachers of the public schools of the city of Corsicana, the city school board, city commission and Chamber of Commerce, teachers' and parents' association, and various other organizations combining to win said election, and on account of the many illegal methods and acts used to carry said election, etc. We have carefully examined the many pages of the statement of facts containing the evidence introduced by appellants in support of the charges above referred to, with result that we have failed to find any evidence establishing the commission of any of the acts complained of in said assignment under consideration and the several propositions under same as contained in appellants' brief, whereby any of the electors participating in said election were deterred from voting according to their free will and desire, or were intimidated so as not to be free to exercise the elective franchise in casting their ballots at such election, or that contestants, or any one acting with them, were guilty of such fraudulent acts or conduct as to affect the result of said election. As we view the law, it must clearly appear that the fairness and purity of an election has been materially interfered with before such election should be set aside, and, where violence and intimidation are alleged, the acts constituting such conduct should be shown to have been sufficient either to change the result, or that by reason of it the true result cannot be ascertained with certainty from the returns. We are content to cite the following cases in support of our position: Hodge v. Jones, 17 Tex. Civ. App. 511, 43 S. W. 41; Bailey v. Fly, 35 Tex. Civ. App. 410, 80 S. W. 675; Whaley v. Thomason, 41 Tex. Civ. App. 405, 93 S. W. 212. Said assignment is therefore accordingly overruled.

[8] Appellees by their first cross-assignment of error as contained in their brief, being thirty-seventh assignment in record, question the correctness of the trial court's ruling to the effect that a person qualified to vote to amend the charter of the city of Corsicana must "be a qualified property taxpayer, and own property subject to taxation." After a careful investigation of the authorities, we have reached the conclusion that this assignment should be sustained.

[9] The election held on the 18th day of May, 1920, was held under a valid ordinance passed by the city commission of the city of Corsicana and had for its purpose the amendment of the city charter of the city of Corsicana on the subject of taxation as embraced in sections 41 and 45, respectively, which was adopted December 11, 1917, and remained in force from that date up to the time said charter was amended by the election of May 18, 1920. The ordinance passed provided for the proper form of official ballot, same submitting the one subject, namely:

"Shall the city charter of the city of Corsicana, as adopted on December 11, 1917, for the government and management of the affairs of said city, be amended by amending sections 41 and 45 so as to authorize the commission of the city to levy a tax of 2½ per cent. on the one hundred dollars assessed valuation of all property in said city?"

The other portion of the ballot apportioned the tax to be thus levied in part as follows:

"Not exceeding 75 cents on the one hundred dollars valuation for school purposes, and five per cent. on the one hundred dollars valuation for support of the free public library."

It cannot be seriously contended in the light of the constitutional provision governing the election so held to amend the charter of the city of Corsicana that the mere apportionment of a portion of the tax thus to be voted upon would have the effect to change the purpose of the election from that to amend the charter of said city to an election for the purpose of levying a tax only for the support and maintenance of schools as provided for in section 10, art. 11, of our state Constitution.

Section 5, art. 11, provides the only method for the amendment of the charter of said city in the following clear and positive terms:

"Cities having more than 5,000 inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature."

For what purpose was said election held? We must look to the language of the ordinance passed, the thing to be accomplished, and the ballot used in such election, to determine the purpose for which the election was held. The ordinance declares in positive terms that the election was to be held for the purpose of amending section 41 and section 45 of the charter of the city of Corsicana, relating to the subject of taxation. The ballot used at said election clearly expressed

the object of the election in keeping with the ordinance under which said election was held. There is no conflict to be found in the language employed in section 3 of article 7, section 9 of article 8, and sections 5 and 10 of article 11 of our state Constitution; therefore full force and effect should be given to section 5 of article 11, not only as to the right to amend a charter by a city having more than 5,000 inhabitants by a majority vote of the qualified voters of said city at an election held for that purpose, but also the right to levy a tax under the provisions of said section 5, art. 11, for general municipal purposes not exceeding the rate of 2½ per cent. of the taxable property of such city.

The provisions of section 10 of article 11 do not apply to the holding of said election, as said election was not "to levy and collect a tax for the support and maintenance of a public institution of learning" within the meaning of said constitutional provision, but was an election held under the provisions of section 5 of article 11 to amend the charter of the city of Corsicana in the particulars hereinabove pointed out. Therefore the provision of section 10, art. 11, requiring "two-thirds of the taxpayers of such city or town to vote for such tax" did not apply to the holding of such election, and cannot be held to be a limitation upon the provisions of said section 5; for to so hold would be creating a conflict that in fact does not exist, and, if in fact any conflict did exist, section 5 of article 10 would prevail as being the last expression of the sovereign will of the people of the state. Without comment we deem it sufficient to refer to the following authorities in support of the conclusion we have reached, which requires that this assignment be sustained, namely: Const., art. 7, § 3, art. 8, § 9, and art. 11, §§ 5, 10; articles 1096a and 1096b, Vernon's Sayles' Texas Civil Statutes, 1914; City of Fort Worth v. Davis, 57 Tex. 225; Werner v. City of Galveston, 72 Tex. at page 29, 7 S. W. 726, 12 S. W. 159; City of El Paso v. Ruckman, 92 Tex. at page 91, 46 S. W. 25;. City of Fort Worth v. Cureton, Attorney General (Sup.) 222 S. W. 531; City of Rockdale et al. v. Cureton, Attorney General (Sup.) 229 S. W. 852; State ex rel. Wayland et al. v. Vincent et al., 217 S. W. 402. We therefore hold that said election held on the 18th day of May, 1920, under and by virtue of ordinance passed by the commission of the city of Corsicana on the 6th day of April, 1920, was for the purpose of amending sections 41 and 45 of the charter of said city of Corsicana adopted December 11, 1917, and that the inhabitants of the city of Corsicana had the right to amend said charter by a majority vote of the qualified electors thereof, and further it was not necessary for a voter to be a property tax paying voter in order to participate in such election. The conclusion reached makes it unnecessary to discuss the remaining assignments, as same require the affirmance of the judgment of the court below.

It is therefore ordered that the judgment of the trial court be, and the same is, hereby, in all things affirmed.

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes