STATE ex rel. LUKOVICH et al. v. JOHNSTON et al.

No. 12244.

Court of Civil Appeals of Texas. Galveston.

Jan. 11, 1951.

Rehearing Denied Feb. 1, 1951.

of Galveston County, upon relation of one Ambrose Lukovich, a candidate for the office of Fire-Police Commissioner of the City of Galveston in a municipal election held on May 10th, 1949, against respondent Walter L. Johnston, and three other candidates for said office. Walter L. Johnston was declared elected to the office of Fire-Police Commissioner in said election and is now in possession of said office. A statement of the facts found and the issues presented are fully set out in the former decision of this Court in Volume 228 S.W.2d 327.

In a trial before the Court, judgment was rendered that relator was not entitled to the relief prayed for and that defendants were entitled to judgment. On application of relator, the trial court made and filed findings-of-fact and conclusions-of-law.

Upon the second trial of this suit the ballot box in Precinct No. 17 was opened and the ballots therein recounted. After eliminating those votes not personally signed by the presiding judge of the precinct which were found to have been illegally cast and were thrown out, respondent Johnston was found to have been elected by a majority of seven votes.

On this trial it was stipulated by the parties that the testimony given by Oscar Bock, the election judge of Precinct No. 14, on the first trial would be considered as having been introduced in the second trial of the case. In the former trial Mr. Bock had testified that when voters came to his box to vote he asked them if they needed help and that if they stated to him that they did need help he helped them write their ballots. He stated that he helped about 20 or 25 persons and that he placed these ballots in the ballot box for them; that most of the people he helped were colored people who did not state that they could not read and write but stated that they wanted assistance. He testified that some of the people he assisted were neither blind nor crippled.

Relator relies in this appeal on two points of assigned error both of which are based on the contention that the trial court committed reversible error in refusing to

Raymond E. Magee, County Atty. Galveston; Al L. Crystal, Houston; Robert R. Thornton and Bryan F. Williams, Jr., both of Galveston, for appellants.

Markwell & Stubbs and Russel H. Markwell, all of Galveston, Sherwood Brown Jr., Walter Ressel, Stone & Phipps, and Vincent Licata, all of Galveston, of counsel, for appellees.

MONTEITH, Chief Justice.

This is a second appeal in a quo warranto action brought in the District Court

eliminate all of the votes cast in said election in precinct No. 14 for the alleged reason that it is undisputed in the record that assistance had been rendered certain unidentified voters in that precinct by its presiding judge in violation of Article 3010 of the Revised Civil Statutes, that the votes which had been illegally cast could not be separated from the legal votes cast and that due to this fact it was impossible to ascertain the true result of the election.

The parts of Article 3010, Vernon's Annotated Civil Statutes, material to this appeal provide that not more than one voter at the same time shall be permitted to occupy a voting booth, that no assistance shall be given a voter in preparing his ballot, except when the voter is unable to himself prepare the ballot because of some bodily infirmity that renders him physically unable to read and that in that case two judges of such election who have been sworn not to suggest how such voter shall vote may assist him.

■ At Volume 29, Corpus Juris Secundum, Elections, § 127, p. 193, the rule is announced that where in an election contest illegal votes can be segregated from the legal votes cast, only the illegal votes should be thrown out, and that the entire vote need not be impeached, but that where it is impossible to separate improperly marked ballots from those ballots which have been properly marked the votes of the entire district must be excluded.

This rule of law was first recognized and followed by the Courts of this state in the early case of Hodge v. Jones, 17 Tex.Civ.App. 511, 43 S.W. 41, 42, in which case the Court quoted from 1804f, which held that "Should it appear on the trial of any contest provided for in article 1801 that it is impossible to ascertain the true result of the election * * * either from the returns * * * or from any evidence within reach, or from the returns considered in connection with other evidence, or should it appear from the evidence that such a number of legal voters were by the officers or managers of the election denied the privilege of voting, as had they been allowed to vote would have material-ly changed the result, the court should adjudge such election void".

Articles 1801 and 1804f, referred to by the Court in that case, have been carried forward as Article 3054 of the Revised Statutes of 1925 which provides, in substance, that if it appears on the trial of any election contest provided for in Article 3045 that it is impossible to ascertain the true result of an election about which a contest is made either from the returns of the election or from any evidence within reach that such a number of legal voters were denied the privilege of voting by the officers of the election, and that such action would have materially changed the result of the election, the Court should adjudge such election void.

This rule was recognized and followed in the case of Whaley v. Thomason, 41 Tex. Civ.App. 405, 93 S.W. 212, in which it is held that where it is impossible to determine the true result of an election or where the result of the election is doubtful, the election should be set aside.

The decisions of the courts of other jurisdictions dealing with the controlling question presented in this appeal with few exceptions, follow substantially the line of reasoning adopted by our Courts.

In Arkansas—In the case of Cain v. Carl-Lee, 169 Ark. 887, 277 S.W. 551, the Supreme Court of Arkansas, under almost identical facts, held that where the illegal votes in the precincts involved could be separated from the legal votes the court should throw out only the illegal votes; but that where it is undisputed that the illegal votes cast in certain precincts could not be segregated from the legal votes cast to such an extent as to make it impossible to fairly ascertain who received the majority of the votes cast, the Court is justified in disregarding the results of the election in those precincts.

In Kentucky—In the case of Muncy v. Duff, 194 Ky. 303, 239 S.W. 49, under a similar fact situation, the Court of Appeals of that state held that:

If it can not be determined for whom illegal votes were cast and their number is

sufficient to render it doubtful who was the successful candidate at the election, the election should be held to be void.

In this case it was held that the fact that an election judge had no lawful intent in accompanying illiterate voters to the booth to assist them in marking their ballots, contrary to Statute, but was merely following the general custom of that precinct does not save the legality of the ballots.

In Pennsylvania—It is held in the case of In re Luzerne County Election Returns, 301 Pa. 247, 151 A. 897, which involves a state of facts similar in all material respects to the facts in this case, that where illegal as well as legal votes were cast in a district and it was impossible to separate the illegal from the legal votes, and the electors' choice could not be indicated, the entire district should be thrown out.

In Colorado—In the case of Vigil v. Garcia, 36 Colo. 430, 87 P. 543, it was held that where fraud and irregularities occur in the conduct of an election to such an extent that it is impossible for the contest tribunal to separate with reasonable certainty the legal from the illegal votes, the precinct where the fraud occurred should be excluded.

▮ It is undisputed in the record that the presiding judge of Precinct No. 14 assisted some 20 or 25 voters in marking their ballots, contrary to said Article 3010 of the Statute regulating the manner of assisting illiterate voters or voters who are physically unable to prepare their ballots which Statute has been held to be mandatory and, while the evidence does not indicate any fraudulent purpose on the part of the officers of the election, this fact does not save the legality of such votes. It is undisputed that the votes which were illegally cast cannot be separated from the legal votes cast and, under the above authorities, the entire vote of said precinct must be eliminated. The elimination of the 339 votes cast in that precinct of which relator received 92 votes and respondent Johnston received 156 votes results in a total vote cast in said election for the office of Fire-Police Commissioner for relator 4,285 votes and for respondent 4,228

votes, making a plurality of 57 votes in favor of relator.

▮ While the above cited authorities hold that the vote of the entire precinct should be excluded where fraud and irregularities have occurred in the conduct of an election to such an extent as to render it impossible to separate the legal from the illegal votes or determine who has received the majority of the votes cast, there has existed some question as to whether these rules apply in a quo warranto proceeding. This question is, we think, settled in the case of State ex rel Sutherland v. Pease, Tex.Civ.App., 147 S.W. 649, which was brought as a quo warranto proceeding to oust appellee from the office of Mayor of the City of Corpus Christi on the alleged grounds that ballots cast in said election had been fraudulently marked so as to render ineffective the desires of the voters in the election. In that case the San Antonio Court of Civil Appeals held that the names of the voters whose ballots had been fraudulently marked so as to render ineffective the desires of the voters were admissible.

It is held in Volume 44, American Jurisprudence, at page 106 that the purpose of quo warranto is an appropriate remedy by which to contest an election, and at page 167 of said Volume 44, American Jurisprudence, it is held that the rules of evidence applicable to other civil actions prevail in quo warranto proceedings.

▮ Under an appropriate cross-assignment respondent complains of the action of the trial court in refusing his demand for a jury trial. This contention cannot, we think, be sustained under the facts in this case.

The record reflects that the June term of the trial court began on June 5, 1950, and ended on August 10, 1950. Appellees first demanded a jury on June 15, 1950, and paid a jury fee on June 16. Relator announced ready for trial at the beginning of the June term and the cause was set for trial on June 22, 1950. On account of a jury case then on trial, the case was reset for July 17, 1950. It was found that the granting of respondent's request for a jury trial would have caused the case to

go over to the October term of the trial court and the Court held that respondent's demand for a jury was not seasonably made under Rule 216, Texas Rules Civil Procedure. Continental Fire & Casualty Ins. Corp. v. Surber, Tex.Civ.App., 231 S.W.2d 750.

It follows from above conclusions that the judgment of the trial court must be reversed and that judgment be here rendered in favor of Relator.